We have Mr. Barry Wells for the appellant and Ms. Rebecca Kornick for the appellate. Mr. Wells, I represent the defendant, Mr. Richter, for this cause. Mr. Richter pled guilty in a fully negotiated guilty plea. The terms of the negotiation included a 12-year term in the Department of Corrections in prison and then two years in mandatory supervised release. That was fully negotiated and that sentence was imposed by the judge in agreement with the terms of the plea. However, when Mr. Richter got to the Department of Corrections some time later, the Department of Corrections changed the sentence from a two-year term of mandatory supervised release to a three-year term of mandatory supervised release. Now, they did not do this by going back to court and having the sentence corrected. They did this administratively through self-help. There was no notice. There was no hearing. They just did it. Now, the Department of Corrections doesn't have any authority to sentence anybody. It's true that the crime that the defendant was convicted of, Mr. Richter was convicted of, required a three-year term of mandatory supervised release. It's mandatory. You have to do it. There's no alternative there. But just because the legislature has a sentence, a mandatory minimum sentence, doesn't mean anybody can impose it. I cannot impose a sentence that is required by the legislature. A circuit clerk cannot impose a sentence that's required by the legislature. And the Department of Corrections can't do it either. If this judge had given a couple of concurrent sentences of seven years and the Department of Corrections looks in the statute books and sees that it has to be consecutive, they can't double the time. They have to go back to court. There has to be notice and a hearing and a correction of the sentence. But that's not what happened here. Mr. Richter repeatedly complained about this. It takes the drug on. And now it's gone on so long that he's served up the entire 14 years of his agreement. The 12 years in the Department of Corrections behind bars and the two years of mandatory supervised release combined, 14 years, that's over with. It was over with as of April. We request that this court use its equity powers to fashion a remedy here, that because it was the Department of Corrections that caused this, they should be foreclosed from arguing that he cannot get this relief. If they had gone into court in the first place like they were supposed to, they're required by law to do, that he would have gotten a modified sentence. He would have gotten 11 years behind bars and three years mandatory supervised release. That's the orderly process of law. The reason it didn't follow that orderly process is because a clerk in the Department of Corrections office on his own changed, imposed a sentence, a three-year sentence of mandatory supervised release. He caused so much time has gone by now that there's no other way for Mr. Richter to be made whole and request this court to order his immediate release. Would Whitfield have anything to do with this? Because was that prior to, I would think so. Oh, sure. The Whitfield case was a situation where the defendant had pled guilty and there was nothing mentioned about mandatory supervised release whatsoever. But that's not retro. Well, the point about this case is that there is a court order that's still on the books that says two years mandatory supervised release. If that's going to be corrected, it's going retroactively. It would be applied right now when the judgment's changed. That's when this judgment would be final, when it's corrected for a change, which it's now. How does the inability, I've lost the date here, to find a suitable host site for his being released factor into this, or does it factor in at all? I think it factors in because one of the arguments that's often presented in these cases is that it's very important for the defendant to spend that time outside the prison walls, that you shouldn't give him credit for the time that he served in the Department of Corrections behind bars because the mandatory supervised release time is time that he has to serve in the community, and that's very important for rehabilitation. Well, here, the Department of Corrections had these strict rules that he couldn't go to a place, an apartment or a house, unless it had a landline. If everybody had a cell phone, they couldn't use the landline to hook him up for the ankle bracelet. And so he spent some time in the Department of Corrections, and they're considering that to be mandatory supervised release time. So the Department of Corrections gave him credit for the time he served behind prison bars for mandatory supervised release. If it's that important, why not just add another year to it? But, Mr. Wells, am I correct in thinking that there's only about six months right now? Yes, I think it might even be less than that. Okay. So you want immediate consideration? And, right, immediate consideration, immediate release. Otherwise, he's not going to be able to receive anything. Otherwise, it's moved, essentially. Well, I would argue that even if that happens, it would not be moved because of the likelihood of this process of the Department of Corrections continuing to do this. As long as they keep getting away with it and just hunting through and finding some statute that they believe can be read a certain way and then altering judgments, they're going to keep doing it. And this thing that you raised about the landline, is that something we'll find in the record? There's a long discussion. I don't know that we know exactly why in this case they decided that they couldn't find a suitable site. That's just one of the reasons that's talked about in there about why a suitable site would not be found. But that's just an example. I don't think that it was – I don't think there was any findings of any kind. I don't remember reading the reason. No, that's just my opinion. It wasn't in the briefs, I don't think. I don't know about it. I don't remember any discussion about it. Are there any other questions? Well, thank you very much. Ms. McCormick. Your Honors, Counsel, it's important to remember that the procedural posture of this case, it's the dismissal – from the dismissal of a successive petition, and the standard is de novo. People's position is that, yes, the defendant was misadmonished, and yes, the sentence does say two years' mandatory supervised release. But that sentence was not authorized by – and was beyond what the court was authorized to impose, because the law at the time, in 1999, when this defendant pled guilty, was three years' mandatory supervised release. I think he's stipulating that, essentially. Right, right. But does the DOC have authority to essentially sentence? The Department of Corrections is not sentencing. It's calculating a release date. It's calculating a release date on the proper MSR term that applies by operation of the law. Isn't the MSR part of the sentence? In a sense, but it attaches by operation of the law. But in an important sense. Legally, it would be considered as part of the sentence. That's correct. And the point is, the defendant has forfeited this claim. And forfeiture, you know, it involves something that might have been meritorious if it had been brought to the court's attention in a timely manner. This defendant pled guilty in April 12, 1999. He didn't ever file a timely collateral attack on his guilty plea. Neither did he do a motion to withdraw his guilty plea, and he took no direct appeal. And of all the collateral attacks, he's filed two petitions for relief from judgment, and he's filed an initial post-conviction petition and this successive one. None of them were timely. None of them, he sought leave to file a late notice of appeal of the dismissal of his untimely petition for relief from judgment in 2002, but that was denied. So he's never perfected, up until this point, he's never perfected an appeal from any collateral attack. And all of these add up to forfeiture, and here's why. Forfeiture, exceptions to forfeiture are where fundamental fairness requires. And in this case, fundamental fairness does not so require because the Illinois Supreme Court, in deciding Whitfield and then later on in People v. Morris, has decided that the holding of Whitfield only applies prospectively to those cases that were not made final after December 20, 2005. But Whitfield did not really deal with this issue. In a sense it did. It was a misadmonishment or a nonadmonishment, and it does have to do with the voluntariness of the plea vis-a-vis the admonishment or nonadmonishment or incorrect admonishment about an MSR term. But that's just one. That's fundamental fairness. And Whitfield and Morris, reading those cases, it seems as if fundamental fairness does not require a remedy at this point. Another exception to forfeiture is where the forfeiture stems from ineffective assistance of appellate counsel. Well, in this case, he never perfected an appeal from any of his prior attacks on his complaints about the MSR term. And so we can't say that the forfeiture arises from ineffective assistance of appellate counsel because it just never got there. The third is that where the facts of the claim do not appear on the face of the original appellate record. Well, had there been an original appellate record from the dismissal of the 2002 petition, it would have been apparent of record and it could have been raised. So forfeiture itself, you're not forfeiting something that is without merit. This is the forfeiture of something that had some merit had he raised it timely, but he never did. And the court, in dismissing his successive petition, noted the history and dismissed it on the basis of forfeiture as being frivolous and barred by res judicata. Res judicata doesn't exactly apply. It fits more correctly under forfeiture. Now, you know, this court, the defendant is raising, for the first time on appeal, an issue that doesn't exactly appear in his successive petition. And this court is bound under Jones not to entertain issues that were not raised in that successive petition. And so, you know, the relief that he requests is also, he's basically asking this court to enforce a void sentence because the court below in sentencing him to, or including in the sentence the statement that a two-year mandatory term of supervised release attached, had no authority to do that. So that portion of the court's sentencing order is void. Although it never was reduced to a written order, this was only oral, which makes really no difference. But the defendant can't ask this court to enforce a two-year term of mandatory supervised release because he'd be asking this court to enforce something that is void and cannot be done because it's not authorized by statute. Unfortunately, this defendant has forfeited his claims and this court can give him no relief. And we ask this court to affirm the dismissal of his successive petition. Thank you, Mr. McCormick. Mr. Wiles, what do you say to the Whitfield argument? What cases can you cite that would support, prior to Whitfield, that would support us finding in your favor? Well, I don't think that there's any problems applying to the Whitfield case because in the Whitfield case, we weren't faced with the question of where the Department of Corrections had changed the court order that was already in. There's a court order entered here for a two-year, that has to be enforced. You can't violate a court order just because you think you've got a better idea. You've got to have that court order implemented and enforced until the court corrects it. And so I don't think there's any problem applying to Whitfield here because if it's going to be changed, it's going to be changed now. If it's going to be changed now, it's going to be changed under the rule of Whitfield. Whitfield wouldn't be applied retroactively if it'd be applied now. One of the last things the state said was that the entry was void. They said this was void. Well, how can an attack be unkindly on a void order? A void order can be attacked at any time. It cannot be late. Also, the Department of Corrections altered this after the time for any direct appeal could have been violated. As far as we can tell in this record, RC 46, there's an affidavit from the defendant saying the first time he found out anything about it, it was in September of 2002. So the Department of Corrections hung back on this thing, found out something that they didn't like, altered the judgment, and now they're trying to blame the defendant for not acting more promptly. They were the ones that were dragging the feet. They're the ones who were hiding the ball. They're the ones who were acting extrajudicially, and they shouldn't be heard to complain about the defendant trying to get a remedy out. Unless there's some other questions. I don't think so. Thank you both for your briefs and argument, and we'll take them in under advisement.